IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

TEXAS PUBLIC RADIO,

    Plaintiff,

v.

                                                       Civil Action No. 20-1156

UNITED STATES DEPARTMENT OF
AGRICULTURE.

    Defendant.

## ORIGINAL COMPLAINT

Plaintiff Texas Public Radio ("TPR") files this Complaint against the United States Department of Agriculture ("USDA" or "the Agency") and alleges as follows:

## INTRODUCTION

1. This lawsuit challenges the constructive denial of TPR's May and July 2020 requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, that TPR submitted by to defendant USDA.

2. TPR is a San Antonio-based non-profit organization that regularly reports on government and public policy as part of its vision "to elevate awareness and discourse regarding important community and cultural issues." *About Us*, TEX. PUB. RADIO, https://perma.cc/V5LP-CWJ3 (last visited Sept. 14, 2020). In pursuit of this vision, TPR has produced a number of broadcasts about a large government contract awarded to a San Antonio-based event planning company, CRE8AD8 LLC ("CRE8AD8"), to deliver food to hungry families as part of the Farmers to Families Food Box Program ("the Program"). Through this action, TPR seeks disclosure of records relating to the proposal for this contract, related correspondence between CRE8AD8 and the USDA, and invoices created as part of the contract.

-1-

3. To combat hunger stemming from high rates of unemployment across the country due to the COVID-19 pandemic, the USDA exercised authority under the Families First Coronavirus Response Act to create the Program. *USDA Farmers to Families Food Box*, USDA AGRIC. MARKETING SERV., https://perma.cc/4P97-6SDN (last updated Sept. 21, 2020). USDA's Agricultural Marketing Service ("AMS") partnered with distributors across the country to purchase fresh produce, dairy, and meat products from American producers. *Id.* In turn, the USDA selected distributors to package the products into boxes and transport them to non-profits that serve Americans in need. *Id.* The multi-billion dollar Program was meant to help farmers and over-taxed food banks in a dire time, but food-aid professionals have called it wasteful, saying the government has overpaid a number of the private-sector contractors chosen to package and deliver food boxes, limiting the Program's overall ability to reduce hunger. Jessica Fu and H. Claire Brown, *"Someone's Profiting Off This": New Public Records Reveal Covid-19 Hunger Relief Contractors Get Handsome Payouts for Mediocre Food Boxes,* THE COUNTER (Sept. 3, 2020), https://perma.cc/J5UY-N5JS.

4. One of the most controversial contracts awarded by the USDA was the $39.1 million contract with CRE8AD8. As the company had little to no experience with food distribution, lawmakers and food-aid professionals questioned how they prevailed over more established food-distribution companies. Indeed, when CRE8AD8 first received the contract, it did not have the appropriate Perishable Agricultural Commodities Act license needed to fulfill the contract. Tom Orsborn, *USDA Knocked for 'Unfathomable' $39M Contract Awarded to San Antonio Event Planner*, SAN ANTONIO EXPRESS-NEWS (May 15, 2020), https://perma.cc/LT9X-Q3E6 ("Palomino acknowledged he does not have a PACA License"); *PACA Licensing*, USDA AGRIC. MARKETING SERV., https://perma.cc/T9G2-XLWH (last visited Sept. 14, 2020) ("Much

like you need a driver's license to operate a vehicle, the law requires that you have a PACA license to operate a produce business."). A San Antonio food bank later reported that it received a fraction of the boxes CRE8AD8 promised to deliver. Jaie Avila, *SA Food Bank: Contractor Only Delivered 40 Percent of Food Boxes for the Hungry,* WOIA NEWS4 SAN ANTONIO (June 3, 2020), https://perma.cc/MGT4-VD6Q.

5. Since the USDA released its list of approved contracts on May 8, 2020, TPR has published more than 20 articles and broadcasts about the Program. *See, e.g.*, Paul Flahive, *Hunger in Texas: No End in Sight for Pandemic Food Lines*, TEXAS PUBLIC RADIO (Sept. 23, 2020), https://perma.cc/7Z79-WMB2. A significant amount of this coverage focused on the CRE8AD8 contract because, like TPR, CR8AD8 is based in San Antonio and because of widespread criticism of the contract and CRE8AD8's performance from both a prominent San Antonio food bank and members of Congress.

6. More specifically, TPR's initial May FOIA Request seeks access to the bid proposal submitted by CRE8AD8 for the Program, along with any related communications between the company and the USDA. After the USDA chose not to extend CRE8AD8's contract, in its July FOIA Request TPR sought copies of invoices reflecting the total amount paid to CRE8AD8 by the USDA. TPR seeks these records to provide the public with answers to questions about the validity of the USDA's selection process and the efficiency and effectiveness of a multi-billion dollar government program to distribute meals to hungry Americans. The applicable statutory deadlines have passed, and the USDA has failed to produce documents in accordance with the FOIA. Therefore, Plaintiff seeks declaratory and injunctive relief.

## PARTIES

7. Texas Public Radio ("TPR") is headquartered in San Antonio, Texas. Pursuant to Federal Rule of Civil Procedure 7.1, TPR discloses that it is a 501(c)(3) not-for-profit corporation and issues no stock. The mission of TPR is "to engage in the production and distribution of non-commercial informational, educational, cultural, and entertainment content for the people of Texas . . . while adhering to the highest standards of responsible journalism and the values of Texas Public Radio." *About Us*, TEX. PUB. RADIO, https://perma.cc/V5LP-CWJ3 (last visited Sept. 14, 2020). While TPR operates seven radio stations across the state of Texas, it also publishes articles on its website and mobile app, covering both Texas and national news. *Id.*

8. Defendant U.S. Department of Agriculture ("USDA") is an agency within the Executive Branch of the United States government. The USDA is responsible for developing and executing policy on farming, agriculture, and food, both directly and through its components, including the AMS. USDA is an agency of the United States within the meaning of 5 U.S.C § 552(f)(1). *Our Agency*, USDA, https://perma.cc/NVH3-9BTF (last visited Sept. 14, 2020).

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–06.

10. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

I. **Farmers to Families Food Box Program**

11. In April 2020, the USDA launched the Program under the Families First Coronavirus Response Act in an effort to acquire and distribute agricultural products to families

in need. According to Secretary of Agriculture Sonny Perdue, the USDA put the Program together remarkably quickly:

> [The President is] a man with a business speed, not a government speed. And I've — I figure if I want to continue working for you, I better get a business speed, too. So that's what we did. . . . I'm so proud of the people of USDA for designing this program in a very short period of time, a record period of time. . . . Typically, a contract like this would have taken — the COVID would have been over by the time we got it done.

Sonny Perdue, Sec'y of Agric., USDA, Remarks by President Trump on the Farmers to Families Food Box Program Distribution (Aug. 24, 2020). The program's premise was simple: the USDA would partner with "national, regional and local distributors, whose workforces [had] been significantly impacted by the closure of restaurants, hotels and other food service businesses, to purchase up to $4 billion in fresh produce, dairy and meat products from American producers of all sizes." *USDA Farmers to Families Food Box*, USDA AGRIC. MARKETING SERV., https://perma.cc/4P97-6SDN (last updated Sept. 21, 2020). Distributors would then be expected to package the produce, dairy, and meat products into family-sized boxes, which would ultimately be delivered to those in need. According to the USDA, it has invoiced 86,100,000 total boxes of food as a result of the Program. *Id*.

12. Despite the Program's publicized success, it is "clearly not working for everyone." Press Release, Marcia L. Fudge, Chairwoman, House Agriculture Committee Subcommittee on Nutrition, Oversight & Dep't Operations, *Fudge Opening Statement at Hearing on Overview of Farmers to Families Food Box Program*, (July 21, 2020), https://perma.cc/4G6P-9FFG. Both the USDA and the Program generally have taken criticism for "[relying] too heavily on companies with little demonstrated experience in farming, food chains or food banks." Laura Reiley, *Trump's Signature Effort to Direct Farm Surplus to Needy Families Abruptly Withdraws Large Contract Amid Criticism of Rollout*, WASH. POST (May 22, 2020), https://perma.cc/M4XC-38DF. This

overreliance was evidenced by many companies' failure fully to perform their obligations under Program contracts.

13. In July 2020, mere months after the Program's launch, Congress initiated an investigation into the Program, seeking answers regarding the USDA's contract award process. Rep. Marcia L. Fudge specifically referred to CRE8AD8 in her opening statement in the House Agriculture Committee's hearing on the program: "We've seen reports of companies awarded contracts with little-to-no experience in the timely sourcing and distribution of food, including nearly $40 million to a Texas wedding planner [CRE8AD8]. That contractor committed to providing 750,000 boxes of food. To date, it has distributed fewer than a third of that promise." *Fudge Opening Statement at Hearing on Overview of Farmers to Families Food Box Program*, (July 21, 2020), https://perma.cc/4G6P-9FFG.

## II.  Texas Public Radio's FOIA Requests

14. TPR became interested in the controversy surrounding the Program. As a public, non-profit radio station and news source, TPR recognized the immense public interest tied to the Program and conducted a careful investigation into it.

15. Through this investigation and in its reporting, TPR highlighted many of the same issues that have drawn concern from members of Congress: the USDA in a number of cases offered lucrative contracts through the Program to unqualified vendors. Therefore, TPR filed multiple FOIA Requests with the USDA, seeking information regarding CRE8AD8 and its involvement in the Program.

16. On May 27, 2020, TPR, through its reporter Paul Flahive, filed FOIA Request 2020-AMS-00182-F seeking access to the bid (proposals) for the Program submitted by Greg Palomino or other agents of CRE8AD8 LLC (San Antonio, TX). The Request also seeks access to

records of any communications between Palomino or other agents of CRE8AD8 and the USDA for a roughly two-month period. The Request, in pertinent part, asks the USDA for:

- "the bid [proposals] for the USDA's Farmers to Families Food Box Program submitted by Greg Palomino or other agents of CRE8AD8 LLC (San Antonio, TX)" and

- "records of any communications between Greg Palomino or other agents of CRE8AD8 LLC (San Antonio, TX) and the USDA between April first and June 1st of this year. This includes but is not limited to, emails, phone calls and text messages."

A true and correct copy of TPR's May 27, 2020, FOIA Request is attached as Exhibit A.

17. On May 28, 2020, Flahive spoke on the phone with a USDA official and agreed to limit the scope of the second part of the Request to records of communications transmitted between April 1 and May 28 of 2020, as is reflected in an email from USDA Government Information Specialist Heather Higgs acknowledging the Agency's receipt of the Request. A true and correct copy of Higgs's May 28, 2020, email to Flahive is attached as Exhibit B.

18. On July 6, 2020, after learning that the USDA did not extend CRE8AD8's contract, TPR filed another FOIA Request, 2020-AMS-00220-F. This time, TPR sought copies of invoices generated as part of CRE8AD8's contract with the USDA. The July Request seeks, in pertinent part, "a copy of invoices and the total amount paid to CRE8AD8 LLC by USDA."  A true and correct copy of the July 6, 2020, FOIA Request is attached as Exhibit C.

19. The records sought in TPR's Requests would provide new and valuable insight to the public about the effectiveness of the Program and the USDA's contracting procedures. Disclosure advances the public interest because the information contained in the records is likely to illuminate how and why the USDA awarded one of the largest contracts under the Program and why the government decided not to continue to partner with CRE8AD8 as part of the Program. All told, the information would shed light on the USDA's performance of its statutory duties, letting

taxpayers know, in effect, "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

20. The requested records also advance TPR's mission "to elevate awareness and discourse regarding important community and cultural issues," consistent with FOIA's mission of serving the public interest.

### III. The USDA's Lack of Response

21. Since TPR's Requests were filed in late May and early July, the Agency has yet to issue a response either producing the records in full or in part or denying the request, as required by law. Notwithstanding weekends and legal holidays, it has been well over the twenty working-day period set out under FOIA. The Agency on Sept. 1, 2020 did offer to send a spreadsheet summarizing its CRE8AD8 invoice records but TPR declined and restated its interest in seeing the underlying documents.

22. Under FOIA 5 U.S.C. § 552(a)(6)(A)(i), unless an exception applies under § 552(b)(1)–(b)(9), a decision to grant or deny a request must be issued within twenty days (excepting Saturdays, Sundays, and legal public holidays). "Unusual circumstances" may warrant an extension of time per 5 U.S.C. § 552(a)(6)(B), but the agency involved must provide written notice to the person making such request "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." Even the extension date for "unusual circumstances" should not exceed ten working days unless further arrangements are made with the requester under 5 U.S.C. § 552(a)(6)(B)(ii).

23. The USDA's AMS did not fulfill TPR's reasonable requests before the twenty-day deadline or satisfy the requirements for an "unusual circumstances" ten-day extension. Where, as here, an agency fails to comply with the applicable time limit provisions, 5 U.S.C. § 552(a)(6)(C)(i)

explains that the person making the request to the agency "shall be deemed to have exhausted his administrative remedies with respect to such request."

## **CLAIMS FOR RELIEF**

**WHEREFORE**, plaintiff respectfully prays that this Court:

1. expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

2. order defendants immediately and expeditiously to provide to plaintiff copies of the requested records in their native electronic format or other electronic format, as requested;

3. enjoin defendants from unlawfully withholding the records requested by plaintiff, or portions thereof;

4. award to plaintiff the costs of this proceeding, including reasonable attorneys' fees, pursuant to 5 U.S.C. § 552(a)(4)(E); and

5. grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Thomas S. Leatherbury
Thomas S. Leatherbury
Texas Bar No. 12095275
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
3315 Daniel Avenue (75205)
P.O. Box 750116
Dallas, Texas 75275-0116
Tel.: (214) 768-2562
Fax: (214) 768-1611
Email: thomasl@smu.edu

*Attorney for Texas Public Radio*[1]

---

[1] This complaint has been prepared in part by SMU Dedman School of Law students and State Bar Associate Members Stephanie M. Owen, Bar. No. 24119809, and Evan Rios, Bar No. 24119466, whose State Bar of Texas identification cards are being provided to the Clerk's Office pursuant to Local Rule AT-8.